## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDRIANA THOMPSON, individually and on behalf of all others similarly situated, | Civil Action No: |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| vs. | |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, an Ohio corporation, | **JURY TRIAL DEMANDED** |
| *Defendant*. | |

_____

### CLASS ACTION COMPLAINT

Plaintiff, Andriana Thompson ("Plaintiff"), by and through her undersigned counsel, brings this class action, individually and on behalf of all others similarly situated, against Defendant, Progressive Casualty Insurance Company ("Progressive" or "Defendant"), and alleges as follows:

### INTRODUCTION

1.      This is a class action on behalf of Plaintiff and all other similarly situated insureds in Connecticut who received improperly reduced payments for their total loss vehicles from Defendant, as a result of Defendant's deceptive and unfair use of vehicle valuation reports ("Valuation Reports") prepared by Mitchell International, Inc. ("Mitchell") to determine the actual cash value ("ACV") of the insureds' loss vehicles. By using these Valuation Reports, Defendant systemically and improperly thumbs the scale when calculating the ACV of the loss vehicles by applying so-called "Projected Sold Adjustments" that are: (a) deceptive and unfair; (b) contrary to appraisal standards and methodologies; (c) not based in fact, as they are contrary to the used car industry's market pricing and inventory management practices; (d) not applied by the major

competitor of Mitchell; and (e) on information and belief, not applied by Defendant and Mitchell to insureds in other states such as California.

2.       In the event of a "total loss" to an insured vehicle—*i.e.*, where repair of the vehicle is impossible or uneconomical—Defendant's uniform automobile insurance policies with Plaintiff and putative Class members (defined below) promise to pay for the loss, limited to the ACV of the vehicle. Attached as Exhibit A is a copy of Plaintiff's Policy ("Policy"), which is materially identical to the policy for all members of the putative Class.

3.       When valuing total loss claims for vehicles, it is improper for an automobile insurance company, such as Progressive, to undervalue and underpay the claims by manipulating the data used to determine the actual cash value of the vehicles. Specifically, under its insurance Policy terms and applicable Connecticut law, Defendant has a duty to pay, and represents that it will pay, the ACV of a loss vehicle when adjusting total loss claims. Notwithstanding these obligations and representations, Defendant uses a manipulated valuation process that applies improper and unreasonable adjustments to reduce the value of comparable vehicles specified in the Valuation Reports, which, in turn, reduces the value of the total loss vehicles and, thus, reduces the claim payment to the insured/claimant (Class member).

4.       Specifically, Defendant, through Mitchell, systemically applies a so-called "Projected Sold Adjustment" that results in a significant downward adjustment to the base values of the comparable vehicles that Mitchell uses to calculate the ACV of Plaintiff's and Class members' total loss vehicles. This reduction is contrary to appraisal standards and methodologies and is not based in fact, as it is contrary to the used car industry's market pricing and inventory management practices. This improper adjustment is applied to each of the comparable vehicles in addition to adjustments for differences such as mileage, options, and equipment. The only purported explanation for this downward adjustment appears on the last page of the valuation

reports and is a general, non-descript statement claiming that the reduction is to "reflect consumer purchasing behavior (negotiating a different price than the listed price)." Attached as Exhibit B is a copy of the Mitchell Vehicle Valuation Report for Plaintiff's total loss vehicle (*see* Exhibit B at p. 9).

5.      An integral part of Defendant's fraudulent scheme is a provision in the Policy which requires the parties to submit to an appraisal of the loss if there is a disagreement over the loss. This appraisal provision requires the insured and the insurer each to hire, at their own expense, an appraiser, and to equally bear the expenses of an "umpire" selected by the two, as well as any other expenses of the appraisal. Since the amount by which the insureds' total loss claims are underpaid is likely less (or only marginally greater) than the cost of the appraisal, Defendant knows and intends that insureds will forego the appraisal process and accept the artificially determined loss payment for their total loss claims. Simply put, the appraisal provision as designed by Defendant prevents Plaintiff and Class members from effectively exercising their rights under the Policy.

6.      To be clear, this case does not present a dispute about loss—which both parties agree exceeds ACV, such that the vehicle is a total loss—or even about ACV, which Defendant never determines. Rather, this case challenges Defendant's systematic and fraudulent scheme to mis-value insureds' vehicles that are declared a total loss in a manner which does not comport with representations made by Defendant or obligations undertaken by Defendant in its Policy in order to illegally increase its own profits. This is an issue that cannot be resolved through an appraisal process.

7.      Moreover, the Policy is an unconscionable contract that was unilaterally drafted by Defendant with full knowledge of the unfair scheme it intended to employ to artificially reduce the value of its insured's vehicles, and neither Plaintiff nor the members of the Class had any role in drafting its terms.

8.     Through Defendant's deceptive, fraudulent, and unfair scheme, it has breached its contracts and the covenant of good faith and fair dealing and has been, and continues to be, unjustly enriched.

9.     As a result of Defendant's deceptive, fraudulent, and unfair scheme, Plaintiff and Class members did not receive the benefit of their bargain, and thus sustained actual damages.

10.     By this action, Plaintiff, individually and on behalf of the Class, seeks damages and injunctive and declaratory relief.

## PARTIES

11.     Plaintiff, at all relevant times, was a Connecticut citizen. At all relevant times, Plaintiff was contracted with Progressive for automobile insurance. On or about January 1, 2019, she was in a car accident and Defendant deemed her vehicle to be a total loss.

12.     Defendant is an Ohio company with its principal place of business in Ohio. Defendant provides insurance coverage throughout the United States for first-party property damage under collision and/or comprehensive coverage.

## JURISDICTION AND VENUE

13.     Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiff and the proposed Class members are citizens of the State of Connecticut. Defendant is an Ohio corporation that has its corporate headquarters in Ohio, and, at all relevant times hereto, Defendant was engaged in the business of marketing and selling insurance policies and adjusting insurance claims in the State of Connecticut.

14.     Plaintiff estimates that there are more than 100 putative Class members, and the aggregate compensatory damages (in the amount of the Projected Sold Adjustments that were deceptively deducted), claimed by Plaintiff and the Class, are estimated in good faith to exceed $5,000,000.00.

15.     Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiff's claims occurred in this District, and Defendant transacts business in this District.

## FACTUAL ALLEGATIONS

16.     On January 1, 2019, Plaintiff was involved in a car accident and sustained physical damage to her vehicle.

17.     Like all members of the putative Class, Plaintiff made a property damage claim to Defendant.

18.     Pursuant to the same policies and procedures, Defendant declared Plaintiff's vehicle to be a total loss and purported to offer her the ACV of her loss vehicle, as Defendant promised and represented it would offer her under the uniform provisions of its insurance Policy and Connecticut law.

19.     When calculating its valuations and claims payments, Defendant systemically employs a routine "total loss settlement process." The process has no material differences relevant to this action, regardless of whether it involves first- or third-party claims or which Progressive Group entities issued the relevant policy. This process involves Defendant's obtaining a Valuation Report from Mitchell and then using and relying upon the valuation provided by Mitchell to determine the benefit payment under the Policy. Defendant provided Plaintiff a Mitchell Vehicle Valuation Report on January 9, 2019. *See* Exhibit B.

20.     The Mitchell Valuation Reports used by Defendant during the relevant period followed the same process, provided and disclosed the same or substantially the same material information, and presented that material information in the same or substantially the same format. These Valuation Reports purport to contain values for comparable vehicles recently sold or available for sale in the claimant's geographic area. The Valuation Reports also contain a purported

5

valuation for the loss vehicle based upon advertisements for comparable vehicles listed in the report. The Valuation Reports then adjusts the advertised prices of those comparable vehicles to account for differences in equipment, mileage, and vehicle configuration. *See* Exhibit B at p. 9.

21.     In addition, however, the Valuation Reports used by Defendant make a further adjustment to each total loss vehicle called a "Projected Sold Adjustment." For Plaintiff, Projected Sold Adjustments in the amounts of -$632.00, -$647.00, -$509.00, -$723.00, and - $555.00 respectively, were applied to all five of the comparable vehicles. *See id.* at pp. 6-8.

22.     Defendant provides no data specific to the comparable vehicles or any explanation of industry practices in its Valuation Reports to support the use of *any* Projected Sold Adjustment, much less the specific downward adjustments used in Plaintiff's Valuation Report. Instead, the *only* reference to the adjustment is buried on the last page of each report, and states in full: "Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." *See id.* at p. 9.

23.     Defendant's use of Projected Sold Adjustments is deceptive. As part of a deceptive practice to lower the payment for total loss vehicles, Defendant fails to do what it represents it will do – pay actual cash value. Moreover, as described above, Defendant provides no explanation or justification for applying the Projected Sold Adjustment, much less the specific amount applied, other than the vague statement that it "reflect[s] consumer behavior." *Id.*

24.     In truth, Defendant's application of Projected Sold Adjustments does not reflect market realities (the context in which "consumer behavior" occurs) and instead, runs contrary to customary automobile dealer practices and inventory management, where vehicle list prices are priced to reflect the intense competition in the context of internet pricing and comparison shopping. A negotiated price discount would be highly atypical and therefore improper to use in determining ACV. The inclusion of this significant downward adjustment purportedly to "reflect consumer

purchasing behavior" is particularly improper for Plaintiff and Class members in the context of this action—insureds who have suffered a total loss of their vehicle and need to procure a replacement quickly and thus do not have time to search for the illusory opportunity to obtain the below-market deals Defendant assumes exist and are easily obtainable.

25.     Defendant's Projected Sold Adjustments are contrary to appraisal standards. There are multiple generally-recognized and acceptable methodologies for determining ACV, including the use of comparable vehicles. Defendant begins the process of valuing loss vehicles using comparative methodology, but then improperly deviates from that process by thumbing the scales in favor of Progressive. Defendant documents the loss vehicle's and each comparable vehicle's mileage, options and trim, which are compared in the report, and makes dollar adjustments accordingly. Plaintiff does not challenge these documented adjustments. At this stage of the process, though, Defendant abandons the comparative methodology and applies adjustments that are contrary to proper appraisal methodologies for determining ACV. Appraisers applying proper appraisal methodologies use advertised prices and only make adjustments based on observed and verifiable data; appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable projections.

26.     The impropriety and arbitrariness of Defendant's use of Projected Sold Adjustments are further demonstrated by the fact that Mitchell's primary competitor in providing valuation reports to insurance companies—CCC Intelligent Solutions—does not apply Projected Sold Adjustments. Instead, CCC Intelligent Solutions uses vehicle list prices.

27.     On information and belief, the impropriety and arbitrariness of Defendant's Projected Sold Adjustments are further demonstrated by the fact that Progressive Group entities do not apply these adjustments when valuing total losses in California.

28.     Plaintiff and each member of the Class were damaged by Defendant's application

of these Projected Sold Adjustments because they were not paid the ACV they should have received had Defendant applied proper methodologies and appraisal standards.

29.     Were it not for Defendant's deceptive and improper adjustment, the "Base Value" in each Valuation Report would have been higher, resulting in a higher "settlement value," and in turn, a higher payment by Defendant to Plaintiff and Class members for their vehicles' ACV. Specifically, for Plaintiff, were it not for this deceptive and improper adjustment, the Defendant's payment of ACV would have been $613.20 higher[1] before adding the related increase in payments for applicable sales taxes.

**Defendant's Deceptive and Unfair Appraisal Process**

30.     An integral part of Defendant's fraudulent scheme is a provision in the Policy which requires the parties to submit to an appraisal if there is a disagreement over the amount of loss. This appraisal provision requires the insured and the insurer to hire, at their own expense, an appraiser and to bear equally the expenses of an "umpire" selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which the insureds' total-loss claims are underpaid is likely less than the costs of an appraisal, Defendant knows that the insureds will almost certainly forego the appraisal process and accept the artificially reduced ACV of the vehicle for their total loss claims. As designed, the appraisal clause here effectively prevents Plaintiff and the Class members from exercising their statutory and common law rights.

31.     To be clear, this case does not present a dispute about the amount of loss. Plaintiff does not contest Defendant's determination of the amount of her vehicle loss, nor that the amount of loss exceeded the vehicle's ACV, such that the vehicle was determined by Defendant to be a total loss, *i.e.*, totaled (uneconomical to repair). Rather, this case challenges Defendant's fraudulent

---

[1] $613.20 is the average of the Projected Sold Adjustments applied to all five of the comparable vehicles in Plaintiff's Valuation Report.

scheme to illegally undervalue the Plaintiff and Class members' vehicles that are declared a total loss in violation of the insureds' policy terms and the law. Further, this is an issue that cannot be resolved through an appraisal process because it is an integral part of that very scheme.

32.    Importantly, Plaintiff does not contest the *amount* of the Projected Sold Adjustments Mitchell uses in its Valuation Reports.  Rather, Plaintiff alleges that the application of *Projected Sold Adjustments* to determine ACV *is impermissible* as a matter of law.

33.    In sum, there is no dispute over Defendant's determination that the Plaintiff's and Class members' vehicles are a total loss. Rather, this dispute concerns Defendant's manipulated valuation of the Plaintiff's and Class members' vehicles' ACV.

## CLASS ACTION ALLEGATIONS

34.    Plaintiff brings this action individually and as a class action under Fed. R. Civ. P 23(a) and (b), on behalf of the following proposed Class:

> All Connecticut citizens insured by Defendant who, from the earliest allowable time through the date of an order granting class certification is entered, received a settlement payment from Defendant for the total loss of their covered vehicles that was based on a Valuation Report prepared by Mitchell that decreased the actual cash value of their vehicles by applying Projected Sold Adjustments to the comparable vehicles used to determine the actual cash value of their vehicles.

35.    Excluded from the Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; any governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members.

36.    Plaintiff reserves her right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or narrowed, divided into additional subclasses, or modified in any other way.

37.    **Numerosity.** The members of the Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are

thousands of Class members, the precise number is unknown to Plaintiff at this time but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

38.     **Commonality and Predominance.** This action involves common questions of law and fact which predominate over any questions affecting individual Class members, including, without limitation:

a.  Whether Defendant systemically used Mitchell's Vehicle Valuation Reports in adjusting total loss claims to determine ACV;

b.  Whether the Mitchell Vehicle Valuation Reports applied Projected Sold Adjustments to the value of the comparable vehicles that reduced the base value, and thus improperly reduced the ACV and amount paid by Defendant for Plaintiff's and Class members' total loss vehicles;

c.  Whether representing to claimants that the Mitchell valuation equated with the total loss vehicle's actual cash value was deceptive;

d.  Whether Defendant's deceptive acts and improper practices injured Plaintiff and members of the Class;

e.  Whether Defendant's acts violated its obligations under the Policy;

f.  Whether Plaintiff and the Class are entitled to compensatory damages, and, if so, the calculation of damages; and

g.  Whether Plaintiff and members of the Class are entitled to an injunction restraining Progressive's future deceptive acts and practices.

39.     **Typicality.** The claims of the Plaintiff, who is the representative of the Class herein, are typical of the claims of the proposed Class, in that the claims of all members of the proposed

Class, including those of the Plaintiff, depend on a showing of the acts of Progressive giving rise to the right of Plaintiff to the relief sought herein. There is no conflict between the individually named Plaintiff and the other members of the proposed Class with respect to this action, or with respect to the claims for relief set forth herein.

40.     **Adequacy of Representation.** Plaintiff is an adequate representative of the Class because (a) her interests do not conflict with the interests of the other Class members whom she seeks to represent, and (b) she has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one where insurers breached contracts with insureds. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

41.     **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this as a class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, such that it would be impracticable for the Class members to individually seek redress for Defendant's wrongful conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
## VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT
### CONN. GEN. STAT. TITLE 42, Ch. 735a, *et seq.*

42.     Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein.

43.     This Count is brought by the Plaintiff on behalf of the Class.

44.     Defendant, Plaintiff, and the Class members are each a "person" within the meaning of CONN. GEN. STAT. § 42-110a(3).

45.     Defendant was and is engaged in "trade" or "commerce" within the meaning of CONN. GEN. STAT. § 42-110a(4).

46.     The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a).

47.     As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary Projected Sold Adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

48.     Defendant also failed to comply with Connecticut law, which requires insurance companies, when calculating the value of a total loss vehicle, to "use at least the average of the retail values given such vehicle by (1) the National Automobile Dealers Association used car guide or any other publicly available automobile industry source that has been approved for such use by the Insurance Commissioner, and (2) one other automobile industry source that has been approved for such use by said commissioner." CONN. GEN. STAT. § 38a-353.

49.     By knowingly and intentionally misrepresenting, omitting, concealing, and failing

to disclose material facts regarding its application of an arbitrary Projected Sold Adjustment to comparable vehicles, and its failure to comply with Connecticut law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Connecticut UTPA.

50.    Defendant's misrepresentations and omissions regarding its application of an arbitrary Projected Sold Adjustment to comparable vehicles were made to Plaintiff and the Class members in a uniform manner.

51.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

52.    The facts regarding Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

53.    Plaintiff and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiff and Class members did not, and could not, unravel Defendant's deception on their own.

54.    Defendant had an ongoing duty to Plaintiff and the Class members to refrain from engaging in unfair or deceptive practices under the Connecticut UTPA in the course of its business.

Specifically, Defendant owed Plaintiff and Class members a duty to disclose all the material facts concerning its application of an arbitrary Projected Sold Adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiff and the Class members, and/or it made misrepresentations that were misleading because they were contradicted by withheld facts.

55.     Plaintiff and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary Projected Sold Adjustment to comparable vehicles, including that the Projected Sold Adjustment is arbitrarily selected and applied in an inconsistent manner designed to decrease Defendant's total-loss payments to Plaintiff and Class members under the Policy.

56.     Plaintiff and the Class members purchased Defendant's insurance coverage in reliance on its misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

57.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket losses.

58.     Defendant's violations of the Connecticut UTPA present a continuing risk of future harm to Plaintiff and the Class members.

59.     Plaintiff and the Class members seek an order enjoining Defendant's unfair and

deceptive acts or practices in violation of the Connecticut UTPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

**COUNT II**
**BREACH OF CONTRACT**

60.     Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein.

61.     This Count is brought by the Plaintiff on behalf of the Class.

62.     Plaintiff and each of the other Class members were insured under a Policy issued by Defendant, as described herein.

63.     Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

64.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

65.     Defendant, however, failed to pay the ACV of Plaintiff's and Class members' vehicles because Defendant applied an arbitrary and capricious Projected Sold Adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

66.     Defendant also failed to comply with Connecticut law, which requires insurance companies, when calculating the value of a total loss vehicle, to "use at least the average of the retail values given such vehicle by (1) the National Automobile Dealers Association used car guide or any other publicly available automobile industry source that has been approved for such use by the Insurance Commissioner, and (2) one other automobile industry source that has been approved

for such use by said commissioner." CONN. GEN. STAT. § 38a-353.

67. Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

68. As a result of such contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT III
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

69. Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein.

70. This Count is brought by the Plaintiff on behalf of the Class.

71. Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

72. Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

73. Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the

parties, specifically, to arbitrarily reduce the amount of its total loss payments to insureds, as alleged herein.

74.    Defendant also failed to comply with Connecticut law, which requires insurance companies, when calculating the value of a total loss vehicle, to "use at least the average of the retail values given such vehicle by (1) the National Automobile Dealers Association used car guide or any other publicly available automobile industry source that has been approved for such use by the Insurance Commissioner, and (2) one other automobile industry source that has been approved for such use by said commissioner." CONN. GEN. STAT. § 38a-353.

75.    As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

      a.  Intentionally applying Projected Sold Adjustments to undervalue comparable vehicles, and, in turn, insureds' total loss vehicles;

      b.  Failing to pay insureds the ACV of their total loss vehicles;

      c.  Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims; and

      d.  Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

76.    Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a Projected Sold Adjustment.

## <u>COUNT IV</u>
## UNJUST ENRICHMENT

77.     Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein.

78.     This Count is brought by the Plaintiff on behalf of the Class.

79.     Plaintiff pleads this claim separately, as well as in the alternative, to her other claims, as without such claims she would have no adequate legal remedy.

80.     Defendant requested and received a monetary benefit at the expense of Plaintiff and Class members in the form of premium payments for automobile insurance coverage.

81.     Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss; specifically, Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles to artificially reduce its total loss payments to insureds.

82.     Defendant also failed to comply with Connecticut law, which requires insurance companies, when calculating the value of a total loss vehicle, to "use at least the average of the retail values given such vehicle by (1) the National Automobile Dealers Association used car guide or any other publicly available automobile industry source that has been approved for such use by the Insurance Commissioner, and (2) one other automobile industry source that has been approved for such use by said commissioner." CONN. GEN. STAT. § 38a-353.

83.     If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss; specifically, Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Connecticut law, Plaintiff and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

84.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiff and the Class members, to the detriment of Plaintiff and the Class members.

85.    Plaintiff and the Class members are, thus, entitled to restitution and disgorgement in an amount to be determined at trial.

## COUNT V
## DECLARATORY JUDGMENT

86.    Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein.

87.    This Count is brought by Plaintiff on behalf of the Class.

88.    A dispute between Plaintiff, the Class and Defendant is before this Court concerning the construction of the auto insurance Policy issued by Defendant, and the rights of Plaintiff and the Class arising under that Policy.

89.    Plaintiff, individually and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by Projected Sold Adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

90.    Defendant's unlawful common policy and general business practices as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Class.

91.    As a result of these breaches of contract, Plaintiff and the Class members have been injured.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully seeks judgment in Plaintiff's favor and in favor of the Class as follows:

A. An Order certifying this action as a Class Action and appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

B. An award of damages (including actual, compensatory, statutory, and punitive, as provided by law) and restitution to Plaintiff and the Class in an amount to be determined at trial, plus interest, in accordance with law;

C. Disgorgement of Defendant's profits;

D. Appropriate preliminary and/or final injunctive or equitable relief against the Defendant's actions as described herein;

E. An award for Plaintiff's and the Class's costs of suit, including reasonable attorneys' fees, as provided by law; and

F. Such further and additional relief as is necessary to redress the harm caused by Defendant's unlawful conduct and as the Court may deem just and proper under the circumstances.

**NOTICE PURSUANT TO CONN. GEN. STAT. § 42-110g(c)**

To ensure compliance with the requirements of the Connecticut Unfair Trade Practices Act CONN. GEN. STAT. TITLE 42, Ch. 735a, *et seq*., the undersigned hereby affirms that, on this date, a true and correct copy of this Complaint was mailed to the Attorney General of the State of Connecticut and to the Commissioner of Consumer Protection for the State of Connecticut.

Dated: April 15, 2022

Respectfully submitted,

**MILLER SHAH LLP**
/s/ *Laurie Rubinow*
James E. Miller
Laurie Rubinow
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
         lrubinow@millershah.com

**SHAMIS & GENTILE, P.A.**
/s/ *Andrew J. Shamis*
Andrew J. Shamis, Esq.
Florida Bar No. 101754
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299
Email: ashamis@shamisgentile.com

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
Christopher Gold, Esq.
Florida Bar No. 088733
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: (786) 289-9471
Direct Telephone: (305) 975-3320
Facsimile: (786) 623-0915
Email: scott@edelsberglaw.com
         chris@edelsberglaw.com

***Counsel for Plaintiff and the Proposed Class***