**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

ANDRIANA THOMPSON, individually and on
behalf of all others similarly situated,

  *Plaintiff*,

vs.             **Civil Action No: 22-cv-549**

PROGRESSIVE CASUALTY INSURANCE
COMPANY, an Ohio corporation,

  *Defendant*.

**MEMORANDUM OF LAW IN SUPPORT OF PROGRESSIVE CASUALTY**
**INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Progressive Casualty Insurance Company ("Progressive Casualty" or "Defendant") hereby moves to dismiss Plaintiff Andriana Thompson's ("Plaintiff") Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, this Court should dismiss Plaintiff's Claims against Progressive Casualty with prejudice.

## I.  INTRODUCTION

Plaintiff alleges that Progressive Casualty, through its third-party vendor Mitchell International Inc. ("Mitchell"), undervalued her total-loss vehicle by applying a purportedly "arbitrary and capricious" adjustment called a "Projected Sold Adjustment" ("PSA") in estimating the value of the vehicle. Dkt. No. 1 ("Compl.") ¶ 65. Specifically, Plaintiff asserts that applying the PSA breached her insurance policy and violated "Connecticut law." *Id.* ¶¶ 65-67. Based on these allegations, Plaintiff asserts claims for (Count I) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. Title 42, Ch. 735a, *et seq.*; (Count II)

breach of contract; (Count III) breach of the covenant of good faith and fair dealing; (Count IV) unjust enrichment; and (Count V) declaratory judgment. Plaintiff's Complaint is legally deficient for several reasons.

*First,* the crux of Plaintiff's claims is her allegation that Progressive Casualty violated Conn. Gen. Stat. § 38a-353, which governs adjustment of total-loss claims (the "Total-Loss Statute"). The Total-Loss Statute requires insurers to use specific sources approved by the Insurance Commissioner when calculating the value of a total-loss vehicle. The Mitchell Software is one of the seven sources that the Insurance Commissioner has *expressly approved* for that purpose. Progressive Casualty cannot have violated the Total-Loss Statute by using the Mitchell Software, as Plaintiff alleges, since the Insurance Commissioner has expressly approved the use of the Mitchell Software.  Accordingly, Plaintiff's claims fail as a matter of law.

*Second,* Plaintiff's CUTPA claim fails because it is time-barred. And even if Plaintiff's claim were not untimely, she cannot state a claim for a violation of CUTPA. Connecticut law is well-settled that the Connecticut Unfair Insurance Practices Act ("CUIPA") is the exclusive source of public policy with respect to insurance practices, and Plaintiff does not allege that Progressive Casualty violated CUIPA. That failure is fatal to her claim under the public policy prong of CUTPA. Moreover, Plaintiff's bald allegations of "deception" are insufficient to plausibly allege an "actually deceptive" act or practice under CUTPA.

*Third,* Plaintiff fails to plausibly allege a breach of contract because she fails to allege any facts demonstrating that Progressive Casualty failed to pay for the amount of her loss, which was Progressive Casualty's sole relevant obligation under the policy. In fact, Plaintiff expressly alleges that she does not dispute the amount of her loss. Compl. ¶ 31. Instead, Plaintiff challenges the lawfulness of the PSA. Even setting aside that the Mitchell Software has been approved for

use by the Insurance Commissioner, nothing in Plaintiff's policy precludes application of the PSA. To the contrary, the policy—like the Insurance Commissioner—expressly permits Progressive Casualty to use electronic databases like the Mitchell Software in adjusting total-loss claims.

*Fourth*, the Insurance Commissioner's approval of the Mitchell Software defeats Plaintiff's ability to establish the bad faith required for Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

*Fifth*, Plaintiff's claim for unjust enrichment fails as a matter of law because there is no dispute that the parties' relationship is governed by the policy.

*Sixth,* Plaintiff's claim for declaratory relief fails because it is entirely duplicative of Plaintiff's claim for breach of contract.

For these reasons, as explained more fully below, Progressive Casualty requests that the Court grant its motion and dismiss the Complaint with prejudice.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     Plaintiff's total-loss accident

Plaintiff is a Connecticut resident who was contracted with Progressive Casualty for automobile insurance. Under her policy, Progressive Casualty agreed to "pay for sudden, direct, and accidental loss" to Plaintiff's vehicle. Compl. Ex. A at 14. The maximum payment Progressive Casualty agreed to make is the lowest of four limits of liability enumerated in the policy, one of which is the "actual cash value" ("ACV") of the vehicle. *Id.* at 18. The policy provides that Progressive Casualty "may use estimating, appraisal, or injury evaluation systems to assist [it] in adjusting claims under this policy and to assist [it] in determining the amount of damages, expenses, or loss payable under this policy." *Id* at 25.

On or about January 1, 2019, Plaintiff was in a car accident and submitted a property damage claim to Progressive Casualty. Compl. Ex. B. Progressive Casualty covered the claim and declared her vehicle a total loss. Compl. ¶ 18. Using an "estimating, appraisal, or injury evaluation system[]," *i.e.*, the Mitchell Software, Progressive Casualty determined that the ACV of Plaintiff's vehicle was $5,846.13. Compl. Ex B at 1. This valuation was detailed in a Vehicle Valuation Report provided to Plaintiff on January 9, 2019. Compl. ¶ 19. Based on the valuation, Progressive Casualty paid Plaintiff the ACV of her total-loss vehicle, plus taxes and fees, minus Plaintiff's $1,000 deductible. Compl. Ex B at 1. Plaintiff expressly alleges that "this case does not present a dispute about the amount of loss" and that she "does not contest Defendant's determination of the amount of her vehicle loss." Compl. ¶¶ 6, 31-32.

### B.     Plaintiff's claims

Plaintiff filed this lawsuit on April 15, 2022. Notwithstanding her repeated allegations that she does not dispute the amount of her loss, Plaintiff asserts claims for violation of CUTPA (Couunt I), breach of contract (Count II), breach of the covenant of good faith and fair dealing (Count III), unjust enrichment (Count IV), and declaratory judgment (Count V) based on Progressive Casualty's application of the PSA in estimating the ACV of her total-loss vehicle. Specifically, Plaintiff alleges that Progressive Casualty "failed to pay the [ACV] of Plaintiff's and Class members' vehicles" because, through its third-party vendor Mitchell, it "applied an arbitrary and capricious PSA to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds." *Id.* ¶ 65. Plaintiff alleges that application of the PSA "fails to comply with Connecticut law" and does not comport with "obligations undertaken by Defendant in its Policy." *See, e.g.*, *Id.* ¶¶ 6, 65-66.

### III.    LEGAL STANDARD

Dismissal under Rule 12(b)(6) is required if a plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Vengalattore v. Cornell Univ.*, No. 20-1514, 2022 WL 1788705 at *10 (2nd. Cir. June 2, 2022). But "a court need not credit conclusory or contradictory allegations." *Larsen v. Berlin Bd. of Educ.*, No. 3:21-CV-427, 2022 WL 596677 at *4 (D. Conn. Feb. 28, 2022). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678.

### IV.    ARGUMENT

#### A.    Plaintiff's claims are barred because the Insurance Commissioner approved the use of the Mitchell Software.

"The automobile liability insurance business is one which is extensively regulated." *Roy v. Centennial Ins. Co.,* 171 Conn. 463, 473 (1976). One aspect of this regulatory scheme is Connecticut's Total-Loss Statute, which mandates how auto insurers must calculate the value of a damaged vehicle that has been declared a total loss. Conn. Gen. Stat. § 38a-353. Specifically, Section 38a-353 requires an insurer to calculate the value of a total-loss vehicle by using two "automobile industry source[s] that ha[ve] been approved for such use by the Insurance Commissioner." The Insurance Commissioner has exercised the discretion vested by the Total-

Loss Statute to approve the use of the Mitchell Software to estimate the value of total-loss vehicles in Connecticut.[1] This approval defeats each of Plaintiff's claims.[2]

Plaintiff's claims are uniformly predicated on her assertion that Progressive Casualty violated the Total-Loss Statute by applying a PSA in estimating the ACV of her total-loss vehicle. *E.g.*, Compl. ¶ 32 ("Plaintiff alleges that the application of a *PSA* to determine ACV *is impermissible* as a matter of law."). The PSA, however, is simply one component of the Mitchell Software, which the Insurance Commissioner has expressly approved, pursuant to the legislative grant of authority under the Total-Loss Statute. *See* Compl., Ex. B at 9 (showing the PSA as step 2 in a 5-step valuation process). Plaintiff accordingly cannot demonstrate that the PSA is "impermissible as a matter of law." Compl. ¶ 32.

Courts have consistently held that decisions of the Insurance Commissioner are controlling when authorized by statute. For example, in *Vitti v. Allstate Ins. Co.*, the Connecticut Supreme Court held that Allstate could deduct social security disability benefits from uninsured motorist coverage limits pursuant to a regulation issued by the Insurance Commissioner that allowed offsets for amounts paid under "any … disability benefits law." 245 Conn. 169, 175 (1998). The Court held that "the legislature expressly left to the sound discretion of the insurance commissioner the authority to develop regulations pertaining to… appropriate reductions to the limits of liability."

---

[1] *See* Office of Legislative Research, Research Report 2017-R-0165 Revised, Calculating Insurance Settlements on Totaled Vehicles (August 29, 2017) at https://www.cga.ct.gov/2017/rpt/pdf/2017-R-0165.pdf (listing the approved automobile industry sources); *see also* https://portal.ct.gov/CID/General-Consumer-Information/FAQs-Regarding-Repairs-to-Your-Vehicle.

[2] The Court can take judicial notice of the Commissioner's approval because it is a public record. A Court may consider matters of public record on a 12(b)(6) motion "such as statutes, case law, city charters, city ordinances, criminal case dispositions, *letter decisions of government agencies, published reports,* records of administrative agencies, or pleadings in another action." *Estate of Axelrod v. Flannery,* 476 F. Supp. 2d 188, 200-m01 (D. Conn. 2007) (emphasis added and internal citations omitted).

*Id.* at 187. In so holding, the Court made clear that the *Vitti* plaintiff could not challenge Allstate's conduct through a lawsuit: "[t]he insurance commissioner has drawn a careful line… [a]lthough the plaintiff may disagree with the location of that line, his remedy lies with the legislature or the insurance commissioner, not with this court." *Id.* at 192-193; *see also Velez v. Comm'r of Labor,* 306 Conn. 475 (2012) (commissioner of labor's definition of "employee" under the relevant statute was determinative where interpretation was made pursuant to a legislative grant of authority). The same reasoning applies here.

The Connecticut Legislature has delegated oversight of valuation sources to the Insurance Commissioner by requiring an insurer to use at least one "publicly available automobile industry source that has been approved for such use by the Insurance Commissioner" when "calculating the value of [a total-loss vehicle]." Conn. Gen. Stat. § 38a-353. If an insured disagrees with the amount the insurance company will pay, the Department of Insurance provides a mechanism for the insured to file a complaint with the Consumer Affairs Division.[3] Plaintiff does not allege that she used this process; instead, she asks this Court to substitute its judgment for the Insurance Commissioner's judgment, exercised pursuant to the Commissioner's statutory authority, and declare that the PSA violates Connecticut law. That is impermissible under Connecticut law, and the Complaint should be dismissed on this basis alone.

**B.   Plaintiff fails to plead a claim for violation of CUTPA.**

1.   *Plaintiff's claim is time-barred.*

Plaintiff's claim under CUTPA should be dismissed because it is time-barred. Connecticut General Statute § 42-110g(f) provides that CUTPA actions "may not be brought

---

[3] *See* FAQ's Regarding Repairs to Your Vehicle, State of Connecticut Insurance Department at https://portal.ct.gov/CID/General-Consumer-Information/FAQs-Regarding-Repairs-to-Your-Vehicle (last accessed June 12, 2022).

more than three years after the occurrence of a violation." Plaintiff expressly alleges that Progressive Casualty provided her the Mitchell Valuation Report showing application of the PSA to estimate ACV of the vehicle on January 9, 2019. Compl. ¶ 19. Plaintiff filed this action on April 15, 2022—more than three years later. Plaintiff's failure to bring her CUTPA claim within the statutory period of limitations requires dismissal of her claim. *Bellemare v. Wachovia Mortgage Corp.*, 94 Conn. App. 593, 606 n. 6, 894 A.2d 335 (2006) ("Pursuant to the clear and unambiguous language of [General Statutes] § 42-110g(f), no cause of action can be maintained under CUTPA if brought more than three years after the unfair practice occurs."), *aff'd*, 284 Conn. 193, 931 A.2d 916 (2007).

      2.    *Even if Plaintiff's claim was not time-barred, Plaintiff fails to allege any deceptive or unfair trade practice.*

A plaintiff may establish a violation of CUTPA by demonstrating either "an actual deceptive practice . . . or a practice amounting to a violation of public policy." *See Miller v. Guimaraes*, 78 Conn. App. 760, 775 (2003). Plaintiff here alleges Progressive Casualty violated CUTPA "by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary PSA" and failing "to comply with Connecticut law," *i.e.*, the Total-Loss Statute. Compl. ¶¶ 47-48. As detailed below, Plaintiff fails to sufficiently allege an "actual deceptive practice" or violation of public policy sufficient to sustain her CUTPA claim.

      i.    Plaintiff fails to allege any actually deceptive conduct.

"An act or practice is actually deceptive under CUTPA when there is: (1) 'a representation, omission, or other practice likely to mislead consumers'; (2) the consumer 'interpret[s] the message reasonably under the circumstances'; and (3) 'the misleading representation, omission, or practice [is] material—that is, likely to affect consumer decisions or conduct.'" *Langan v. Johnson & Johnson Consumer Companies, Inc*., 95 F. Supp. 3d 284, 288

(D. Conn. 2015) (quoting *Smithfield Assocs., LLC v. Tolland Bank*, 86 Conn.App. 14, 28, 860 A.2d 738 (2004)). Plaintiff does not allege such an "actually deceptive" practice because she does not allege *any* representation or omission that Progressive Casualty made to her. *See generally,* Compl.

Plaintiff makes the boilerplate allegation that Progressive Casualty "misrepresent[ed]" and "omit[ed]" "material facts regarding its application of an arbitrary PSA." Compl. ¶ 49. But Plaintiff does not identify a single representation or what "material" facts were allegedly withheld from Plaintiff. At most, Plaintiff alleges that Progressive Casualty "represents it will . . . pay ACV," and allegedly fails to do so as a result of the PSA. *Id.* ¶ 23. But these allegations merely reflect Plaintiff's subjective disagreement with the PSA based on her allegation that is it "arbitrary" and "does not reflect market realities." *Id.* ¶¶ 24-27. Plaintiff does not allege any actual statement made by anyone at Progressive Casualty that is likely to deceive a consumer interpreting the statement reasonably under the circumstances. *Smith v. Wells Fargo Bank, N.A.,* 158 F. Supp. 3d 91, 102 (dismissing CUTPA claim for failure to allege an actual misrepresentation or deceptive act). Moreover, Plaintiff cannot state a claim based on an alleged omission because Plaintiff herself alleges that she was fully informed about the Mitchell Software's application of the PSA. *Id.* ¶¶ 22, 23; *see also id.* Ex. B.

ii.   Plaintiff's failure to allege a CUIPA violation is fatal to any claim under the public policy prong of CUTPA.

The only source of public policy with respect to insurance practices in Connecticut is CUIPA, and CUIPA specifically defines unfair and deceptive practices in the business of insurance. *See Chicago Title Insurance Co. v. LaPuma,* 62 Conn. L. Rptr. 893, 895 (Conn. Super. 2016) (the "legislature's intent was for CUIPA to provide the 'exclusive and comprehensive source of public policy with respect to general insurance practices' in a manner designed to

'occupy the field in defining unfair insurance practices.'") (quoting *State v. Acordia,* 310 Conn. 36, 35, 37 (2013)). For this reason, "where the alleged misconduct is related to the insurance industry," a "plaintiff may not bring a cause of action under CUTPA based on conduct which does not also violate CUIPA." *O&G Indus. Inc. v. Travelers Prop. Cas. Corp.*, 2001 WL 1178709, at *3 (Conn. Super. Sept. 7, 2001) (citing *Mead v. Burns*, 199 Conn. 651, 663-66 (1986)).

Plaintiff, however, does not allege a violation of CUIPA. *See generally* Compl. Instead, Plaintiff attempts to tether her CUTPA claim to an alleged violation of the Total-Loss Statute. The Total-Loss Statute, however, is not a part of CUIPA and cannot be enforced through CUTPA. *Compare* Total-Loss Statute, § 38a-353, *with* CUIPA, § 38a-816 ("[t]he following are defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance"); *see also Active Ventilation Products, Inc. v. Prop. & Cas. Ins. Co. of Hartford,* 2009 WL 2506360 at *2 (Conn. Super. 2009) (holding that the plaintiff's "failure to ground [an] alleged CUTPA violation in CUIPA is fatal"). The absence of an alleged CUIPA violation requires dismissal of Plaintiff's CUTPA claim to the extent it is based on any purportedly unfair practice or violation of public policy. *Lawns Etc., LLC v. Family Farm Cas. Ins. Co.*, No. CV106002467S, 2010 WL 4516085 at *n.6 (Conn. Super. Oct. 14, 2010) (collecting cases in which an insurance-related CUTPA claim was stricken or dismissed because a plaintiff did not allege an underlying CUIPA violation).

Moreover, even if Plaintiff could rely on the Total-Loss Statute as a basis for her CUTPA claim, she cannot establish a violation of the Total-Loss Statute because, as demonstrated above, the Insurance Commissioner has expressly approved Progressive Casualty's use of the Mitchell Software. *See supra* Part IV-A. Plaintiff cannot plausibly allege any unfairness or violation of

public policy as a result of Progressive Casualty's use of an approved total-loss valuation system to estimate the ACV of her vehicle.

### C.      Plaintiff's contract claim must be dismissed because she does not plausibly allege breach or damages.

To state a claim for breach of contract, Plaintiff must plausibly allege "formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Hawley Avenue Associates, LLC v. Robert D. Russo, M.D. & Associates Radiology, P.C.,* 130 Conn. App. 823, 832 (2011). Under Plaintiff's policy, Progressive Casualty is obligated to "pay for sudden, direct, and accidental *loss*" to a covered auto, up to the limits of liability in the policy—one of which is ACV. *See* Compl., Ex. A. While Plaintiff baldly alleges that Progressive Casualty failed to pay her the ACV of her total-loss vehicle because it applied a PSA, she fails to support that conclusory assertion with any factual allegations demonstrating that Progressive Casualty failed to pay for Plaintiff's *loss*.

Critically, Plaintiff does not allege what she thinks the ACV of her vehicle was, how much Progressive Casualty paid her, or how that payment was less than what she thinks Progressive Casualty owed her under the policy. At most, Plaintiff has alleged the amount of the PSA. Compl. ¶ 29. But simply identifying the amount of the PSA does not amount to a plausible allegation that Plaintiff was paid less than the amount of her loss. To the contrary, the Complaint includes the following allegations: "[T]his case does not present a dispute about the amount of loss" and "Plaintiff does not contest Defendant's determination of the amount of her vehicle loss." Compl. ¶ 31. Because Progressive Casualty's obligation under the policy is to pay the amount of the loss, Plaintiff's concession defeats her ability to demonstrate a breach of the policy. *Berlin Corp. v. Continental Cas. Co.,* 42 Conn. L. Rptr. 358, 340-361 (Conn. Super. 2006) ("Absent a showing

that the defendant [insurer] specifically guaranteed a particular result and that such a result was not delivered, the plaintiffs cannot maintain an action for breach of contract.").

The remainder of Plaintiff's allegations make plain that Plaintiff's true claim is that the PSA violates the Total-Loss Statute, separate and apart from the "amount" of the adjustment or the ultimate amount of Plaintiff's total-loss settlement. Compl. ¶¶ 31-32. But Plaintiff's policy does not preclude the use of a PSA—or any other specific adjustment, for that matter. To the contrary, the policy expressly allows the use of an "estimating, appraisal, or injury evaluation system[]" to estimate the value of a total-loss vehicle. Compl., Ex. A. Simply challenging the propriety of the PSA, therefore, is insufficient to state a claim for breach of the policy. For the same reasons, Plaintiff does not plausibly allege damages, which are an essential element of her substantive claim. *Nwachukwu v. Liberty Bank*, 257 F. Supp. 3d 280, 293 (D. Conn. 2017) (dismissing claim for breach of contract due to failure to allege actual damages caused by the breach). Plaintiff's breach of contract claim should accordingly be dismissed.

### D.   Plaintiff's claim for breach of the covenant of good faith and fair dealing fails because application of the PSA does not amount to bad faith.

Connecticut courts use the terms "bad faith," "lack of good faith," and "breach of the covenant of good faith and fair dealing" interchangeably, and apply the same standards for each type of claim. *Capstone Bldg. Corp. v. Am. Motorists Ins. Co*., 308 Conn. 760, 794 n.34, 67 A.3d 961 (2013). To prevail on a bad faith claim, the plaintiff must show that "the defendant engaged in conduct designed to mislead or deceive, or that it neglected or refused to fulfill some duty or contractual obligation not prompted by an honest mistake." *McCulloch v. Hartford Life & Acc. Ins. Co*., 363 F. Supp. 2d 169, 177 (D. Conn. 2005). Plaintiff has not met, and cannot meet, that standard.

Plaintiff's bad faith claim is based on the allegation that Progressive Casualty applied the PSA to purportedly "undervalue" total-loss vehicles and "avoid paying insureds the ACV on their total-loss claims." Compl. ¶ 75. These allegations are insufficient because "a plaintiff may not bring a bad faith claim when an insurer denies benefits based on a fairly debatable interpretation of the policy language." *Preferred Display, Inc. v. Great Am. Ins. Co. of New York*, 288 F. Supp. 3d 515, 527 (D. Conn. 2018); *see also McCauley Enterprises, Inc. v. New Hampshire Ins. Co.*, 716 F.Supp. 718, 721 (D. Conn. 1989) ("[W]hen a good faith legal controversy exists… the insurer's withholding of the policy proceeds cannot be found to be in bad faith…"). Progressive Casualty's application of the PSA through use of the Mitchell System cannot plausibly be characterized as "beyond fair debate" because the Insurance Commissioner expressly approved the Mitchell Software, and the plain language of the policy expressly permits it.

### E.    Plaintiff cannot state a claim for unjust enrichment.

Plaintiff's claim for unjust enrichment must be dismissed because the policy expressly governs Progressive Casualty's obligations in the event of a total-loss. "[U]njust enrichment is not available as a remedy where there is a valid contract between the parties and that contract addresses the matter at issue in the unjust enrichment action." *Gleason v. Durden*, 211 Conn. App. 416, 428 (Conn. App. 2022). Plaintiff's count for unjust enrichment alleges that "Defendant requested and received a monetary benefit … in the form of premium payments for automobile insurance coverage" while purportedly misrepresenting facts regarding its application of PSA. Compl. ¶¶ 80-81. Plaintiff claims Progressive Casualty was unjustly enriched by the premiums because Plaintiff would not have purchased insurance or would have paid less were it not for Progressive Casualty's alleged misrepresentations or omissions. *Id.* ¶¶ 83-84. These allegations cannot support a claim for unjust enrichment "[b]ecause the benefits were conferred while the contracts were still operative, and indeed made up part of [plaintiff's] performance obligations

under the contract." *Richard Parks Corrosion Tech., Inc. v. Plas-Pak Indus., Inc*., No. 3:10-CV-437, 2015 WL 5708539 at *4 (D. Conn. Sept. 29, 2015) (dismissing count for unjust enrichment). Since Plaintiff's claim for unjust enrichment "refers to the insurance premiums made pursuant to the [insurance] policy," "the plaintiff's unjust enrichment allegation is legally insufficient" because it necessarily acknowledges and is based on the existence of an express contract. *Tatro v. State Farm Mut. Ins. Co*., No. CV196090529S, 2021 WL 1402251 at *7 (Conn. Super. Feb. 26, 2021); *see also William Raveis Real Estate v. Cendant Mobility Corp.,* 2005 WL 3623815 at *2 (Super. Conn. Dec. 6, 2005) ("the plaintiff may plead unjust enrichment in the alternative, but this is not accomplished by incorporating into this count all the allegations of an express contract. Such a complaint does not involve alternative pleading, but involves legally inconsistent pleading."). Accordingly, Plaintiff's unjust enrichment claim should be dismissed.

**F.      Plaintiff fails to state a claim for declaratory relief.**

Plaintiff's count for declaratory judgment should be dismissed because it is entirely duplicative of the other claims in the Complaint. Plaintiff seeks a declaration that "it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by PSAs." Compl. ¶ 89. The substance of Plaintiff's request for declaratory judgment is indistinguishable from Plaintiff's statutory and contract claims. *See Bagwell v. World Wrestling Entertainment, Inc.,* 2017 WL 3579609 at *12 (D. Codenn. May 5, 2017) (dismissing count for declaratory judgment as unnecessary and duplicative of plaintiffs' breach of contract claim); *see also Umbach v. Carrington Inv. Partners,* 2009 WL 413346 at *4 (D. Conn. Feb. 18, 2009) (dismissing count where "[t]he declaratory judgment requested by Plaintiff would primarily amount to a finding of breach of contract"). Plaintiff's declaratory judgment claim accordingly fails.

14

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted this 17th day of June, 2022.

By: ___*/s/ Elizabeth F. Ahlstrand*
Elizabeth F. Ahlstrand
Bar No. ct27173
**GFELLER LAURIE LLP**
West Hartford Center
977 Farmington Avenue / Suite 200
West Hartford, CT 06107
860.760.8400
860.760.8401 *Fax*
eahlstrand@gllawgroup.com

Jeffrey S. Cashdan*
jcashdan@kslaw.com
Zachary A. McEntyre*
zmcentyre@kslaw.com
James Matthew Brigman*
mbrigman@kslaw.com
Allison Hill White*
awhite@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree St. NE
Atlanta, Georgia 30309
P: (404) 572-4600
F: (404) 572-5140

Julia C. Barrett*
jbarrett@kslaw.com
**KING & SPALDING LLP**
500 W. 2nd Street
Suite 1800
Austin, Texas 78701

*Counsel for Defendant Progressive Casualty Insurance Company*

**Pro hac vice* motions forthcoming

15

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on this 17th day of June, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

*/s/ Elizabeth F. Ahlstrand*
Elizabeth F. Ahlstrand, Esq.